UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 18-CR-0123-CVE |
| | ) (19–CV-0712-CVE-CDL) |
| ROBERT PATRICK KING, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Now before the Court is defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. # 59). Under 28 U.S.C. § 2255, "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." Defendant's § 2255 motion asserts two grounds for relief challenging his conviction and sentence. Dkt. # 59. Plaintiff has filed a response (Dkt. # 69) and has attached to its response an affidavit of defendant's former attorney, Neal Kirkpatrick. Defendant has filed a reply (Dkt. # 70), and defendant's § 2255 motion is ripe for adjudication.

I.

On June 4, 2018, a grand jury returned an indictment charging defendant with sexual exploitation of a child (count one), distribution of child pornography (count two), and possession of child pornography (count three). Defendant made his initial appearance, he retained Neal Kirkpatrick to represent him, and defendant was detained pending trial. Dkt. ## 7, 15. Kirkpatrick

filed a motion to suppress statements defendant made to the Naval Criminal Investigative Service (NCIS) in Yokosuka, Japan, while defendant was living with his former wife, a servicemember stationed in Japan. Dkt. # 24. According to Kirkpatrick, NCIS agents began an investigation into an Internet Protocol (IP) address suspected of acquiring or sharing child pornography, and the agents determined that the IP address was located in quarters assigned to defendant's former wife. Id. at 1. Kirkpatrick argued that defendant was subjected to custodial interrogation without receiving a Miranda[1] warning. Id. at 3. Kirkpatrick also filed a sealed motion requesting that a psychologist be permitted to examine defendant at the jail, and Kirkpatrick's request for a psychological evaluation at defendant's own expense was granted. Dkt. ## 22, 23.

Counsel for plaintiff contacted Kirkpatrick and offered to allow defendant to plead guilty under Fed. R. Crim. P. 11(c)(1)(C) to count one only, if plaintiff would agree to a stipulated sentence of 20 years and the dismissal of all other charges. Dkt. # 69-1, at 3. The statutory mandatory minimum sentence for the offense charged in count one was 15 years and the statutory maximum sentence was 30 years, and Kirkpatrick believed that defendant's advisory sentencing guideline range for this offense was at least 360 months. 18 U.S.C. § 2251; Dkt. # 69-1, at 3. The plea offer also required defendant to withdraw his motion to suppress. Dkt. # 69-1, at 4. Kirkpatrick met with defendant and conveyed the plea offer to him, and Kirkpatrick states that he reviewed each paragraph of the proposed plea agreement with defendant. Id. Defendant chose to accept the plea offer, and a change of plea hearing was set for September 7, 2018.

At the change of plea hearing, the Court explained to defendant the consequences of asking the Court to accept a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C), and that he would be

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

sentenced to the agreed sentence of 20 years if the Court accepted the plea agreement. Dkt. # 51, at 9. However, the Court explained that defendant would be permitted to withdraw his guilty plea if the Court chose not to accept the plea agreement. Id. Defendant represented that he understood the terms of the plea agreement and he was pleading guilty of his own free will. Id. at 14-15. The Court reviewed with defendant all of the possible consequences of defendant's guilty plea, including imprisonment, monetary fine, restitution, forfeiture, and supervised release. Id. at 16-19. The Court advised defendant that the plea agreement contained a waiver of appellate and post-conviction rights, and the Court reviewed the terms of the waiver with defendant:

> THE COURT: Do you understand that by entering into this plea agreement and entering a plea of guilty, you are waiving or giving up certain appellate and post-conviction rights?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: That waiver is contained in paragraph 3 of your plea agreement and I have an obligation to review it with you on the record.
>
> Do you understand that in consideration of the promises and concessions made by the United States in your written plea agreement, you are knowingly and voluntarily agreeing to waive the right to directly appeal your conviction and sentence pursuant to 28, U.S.C., Section 1291 and/or 18, U.S.C., Section 3742(a), except that you reserve the right to appeal from a sentence that exceeds the statutory maximum?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that you are expressly acknowledging and agreeing that the United States reserves all rights to appeal your sentence under 18, U.S.C., Section 3742(b) and the case of *United States v. Booker*?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that you are knowingly and voluntarily agreeing to waive the right to collaterally attack your conviction and sentence pursuant to 28, U.S.C., Section 2255 except for claims of ineffective assistance of counsel?

> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that you are expressly acknowledging that Mr. Kirkpatrick has explained your appellate and post-conviction rights, that you understand those rights, and that you are knowingly and voluntarily waiving those rights as set forth in paragraph 3 of your plea agreement?
>
> THE DEFENDANT: Yes, ma'am.

Id. at 22-23. The Court reviewed the constitutional rights that defendant would be waiving by changing his plea, including the right to a jury trial, and defendant acknowledged that he understood the rights he was waiving by proceeding with the plea. Id. at 24-26. After reading count one of the indictment to defendant, the Court asked defendant to explain in his own words how he committed the charged offense, and defendant admitted that:

> THE DEFENDANT: I, Robert Patrick King, admit that in or about the summer of 2017 I knowingly employed, used, persuaded, induced, enticed and coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. The depiction was produced using materials that had traveled in interstate and foreign commerce. At the time, I was accompanying the Armed Forces in Japan as a dependent of a member of the Armed Forces.

Id. at 30-31. Defendant acknowledged that he was agreeing to a sentence of 20 years imprisonment, and the Court advised defendant he would be permitted to withdraw his guilty plea if the Court rejected the plea agreement. Id. at 32.

The Court asked plaintiff's counsel to make a representation of the facts it would be prepared to show if the case were to proceed to trial, and counsel stated that agents of the NCIS were conducting an investigation into child pornography file-sharing at military installations in the Far East during the summer of 2017. Id. at 33. In May and June 2017, agents downloaded over 20 images of child pornography from an IP address registered to Crystal King at the Yokosuka Naval Base in Japan. Id. Records established that defendant resided at the address as a dependent of his

active duty spouse and, on October 13, 2017, agents served a command authorization for search and seizure at the King residence. Id. Defendant was present and he consented to a search of his electronic devices, and he also admitted to agents that he had downloaded child pornography onto his electronic devices. Id. at 33-34. In addition to downloaded images of child pornography, agents found images of three young girls, including defendant's daughter, that had been taken in the Kings' bathtub that showed the exposed genitalia of the children and potential unlawful sexual contact with the minor children. Id. Defendant later admitted to taking these photographs, and that the phone used to take the photographs had been manufactured in foreign commerce. Id. at 35. Based on defendant's admissions and the full record of the change of plea hearing, the Court found that defendant had knowingly and voluntarily pled guilty to count one and the Court accepted his guilty plea. Id. at 36.

According to Kirkpatrick, defendant "decided that he was not guilty after all" and sought advice from Kirkpatrick about withdrawing his guilty plea. Dkt. # 69-1, at 4. Kirkpatrick told defendant that it would be "futile and unwise" to attempt to withdraw his plea. Id. On October 31, 2018, Kirkpatrick filed a motion to withdraw as counsel of record (Dkt. # 35) on the ground that defendant was dissatisfied with Kirkpatrick's services and had filed a bar complaint against him. The Court granted Kirkpatrick's motion to withdraw and appointed Paul Hess as substitute counsel. Dkt. # 36. Hess subsequently filed a motion to withdraw from his representation of defendant, and the Court held an ex parte hearing on the motion. Dkt. ## 41, 43. Following the hearing, the Court granted the motion to withdraw and appointed Thomas Wright as substitute counsel. Dkt. ## 44. Wright filed a sentencing memorandum (Dkt. # 50) asking the Court to accept the plea agreement and recommend to the Bureau of Prisons that defendant be placed in a facility with sex offender and

drug abuse treatment. The sentencing hearing was held on January 31, 2019. The Court accepted the plea agreement and made the recommendations requested by Wright, and defendant was sentenced to 20 years imprisonment and 10 years of supervised release. Dkt. # 54. The Court advised defendant that he had the right to appeal conviction or sentence. Following the sentencing hearing, Wright filed notice that he had consulted with defendant and defendant did not wish to pursue an appeal. Dkt. # 56.

On December 23, 2019, defendant filed a § 2255 motion (Dkt. # 59) asserting two claims: (1) defendant alleges that agents of the NCIS acted in violation of the Posse Comitatus Act by investigating alleged crimes committed by a civilian on a military base; and (2) NCIS agents exceeded the scope of a search warrant by conducting an automobile search. The Court directed plaintiff to file a response to defendant's § 2255 motion. Dkt. # 62. Plaintiff has filed a response that includes an affidavit of Kirkpatrick, and plaintiff argues that defendant waived the right to seek collateral review of his substantive claims. Dkt. # 69, at 14-16. Defendant could be arguing that his attorney was ineffective for failing to file a motion to suppress asserting these claims, but plaintiff argues that the claims are meritless and would not have been raised by a reasonable attorney. Id. at 20-26. Defendant has filed a reply (Dkt. # 70) and his § 2255 motion is ripe for adjudication.

**II.**

Plaintiff argues that defendant's plea agreement (Dkt. # 30) contains a waiver of certain post-conviction rights and defendant's substantive claims fall within the scope of the waiver. The plea agreement states that "defendant waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims of ineffective assistance of counsel." Dkt. # 30, at

3. Defendant has filed a reply but he fails to respond to plaintiff's argument that his substantive claims are barred by the waiver of post-conviction rights in the plea agreement. Dkt. # 70.

The Tenth Circuit has established a three-part test to determine if an appellate and post-conviction waiver is enforceable:

> (1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice . . . .

United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004). In determining the scope of an appellate and post-conviction waiver, a court must strictly construe the waiver in favor of the defendant and evaluate the scope of the waiver "in light of the defendant's reasonable understanding at the time of the guilty plea." United States v. Novosel, 481 F.3d 1288, 1291 n.1 (10th Cir. 2007). Challenges to the voluntariness of a guilty plea generally do not fall within the scope of a waiver. United States v. Weeks, 653 F.3d 1188, 1197 n.4 (10th Cir. 2011). Hahn requires the consideration of two factors in considering whether a defendant knowingly and voluntarily agreed to an appellate and post-conviction waiver. First, the court "examine[s] whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily." Hahn, 359 F.3d at 1325. Second, the guilty plea must be the result of an adequate colloquy under Rule 11. Id. A miscarriage of justice may result "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful. Id. at 1327 (quoting United States v. Elliot, 264 F.3d 1171, 1173 (10th Cir. 2001)). A defendant may not avoid enforcement of a waiver under the "otherwise unlawful" exception based on alleged errors in the calculation of his sentence, because this exception is focused

7

on the fairness of the proceedings, rather than result of the proceedings. United States v. Smith, 500 F.3d 1206, 1213 (10th Cir. 2007). A miscarriage of justice does not occur when a defendant receives a sentence higher than he expected if that sentence does not exceed the statutory maximum. United States v. Green, 405 F.3d 1180, 1194 (10th Cir. 2005) (courts should consider the statutory maximum, not the defendant's anticipated sentence under the United States Sentencing Guidelines, to determine if a miscarriage of justice has occurred). The defendant bears the burden to show that a miscarriage of justice has occurred. United States v. Maldonado, 410 F.3d 1231, 1233-34 (10th Cir. 2005).

The first Hahn factor is whether defendant's claims raised in his § 2255 motion fall within the scope of his waiver of post-conviction rights. In his plea agreement, defendant agreed to "waive[] the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims of ineffective assistance of counsel." Dkt. # 30, at 3. Some of the claims asserted in defendant's original § 2255 motion (Dkt. # 59) can reasonably be construed as ineffective assistance of counsel claims that are not subject to the post-conviction waiver. However, the primary claims raised in defendant's § 2255 motion are plainly substantive claims that are not based on allegations of ineffective assistance of counsel, and defendant's claims directly concerning allegedly illegal searches by NCIS agents fall within the scope of the post-conviction waiver. The second Hahn factor is whether defendant knowingly and voluntarily waived certain post-conviction rights. The Court reviewed the entire waiver of appellate and post-conviction rights with defendant at the change of plea hearing, and he stated that he fully understood what rights he was waiving by proceeding with the guilty plea. Dkt. # 51, at 22-23. The language of the post-conviction waiver in the plea agreement is clear and does not use technical or complex language, and defendant has

made no argument that he did not understand the terms of the post-conviction waiver. The Court finds that defendant knowingly and voluntarily waived his right to bring substantive claims challenging his conviction or sentence in a § 2255 motion. The final Hahn factor is whether enforcing the waiver would result in a miscarriage of justice. The waiver of post-conviction rights in this case was the standard waiver contained in every plea agreement in this district, and defense counsel acted reasonably by advising defendant to change his plea pursuant to a plea agreement. The inclusion of a post-conviction waiver was not based on any impermissible factors nor was it otherwise unlawful, and it was merely part of the bargain in which defendant received a sentence lower than he would have likely received if he had gone to trial. The Court does not find that a miscarriage of justice will result from enforcement of the waiver of post-conviction rights contained in the plea agreement, and defendant's substantive claims challenging illegal searches of his property are dismissed subject to the waiver.

### III.

Construing defendant's § 2255 motion broadly, defendant could be arguing that Kirkpatrick was ineffective for failing to file a motion to suppress raising his substantive claims. Defendant argues that agents of the NCIS were not permitted to conduct a criminal investigation of a civilian on a military base under the Posse Comitatus Act, 18 U.S.C. § 1385 (PCA), and he also argues that agents exceeded the scope of a search warrant by searching an automobile located at his residence. Dkt. # 59, at 4-6; Dkt. # 60. Plaintiff responds that the PCA does not prohibit military law enforcement agents from investigating crimes committed by civilians on military bases and, even if defendant could establish a violation of the PCA, the suppression of evidence is not a remedy under the PCA. Dkt. # 69, at 18. Plaintiff also argues that no electronic devices were seized from

9

an automobile as defendant alleges, and the search of defendant's residence was conducted after he consented to the search. Id. at 20.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

The Court does not find that Kirkpatrick provided ineffective assistance of counsel by failing to file a motion to suppress raising either of the potential claims identified by defendant. The PCA states that "[w]hoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army, the Navy, the Marine Corps, the Air Force, or the Space Force as a posse comitatus or otherwise to execute the laws" shall be guilty of an offense. 18 U.S.C. § 1385. The statute prohibits the deployment of federal military personnel for use in civil law enforcement activities. United States v. Dreyer, 804 F.3d 1266 (9th Cir. 2015). However, military personnel are not required to overlook the criminal activities of civilians who are implicated in an investigation of possible criminal violations by members of the military, and civilians may be detained for a limited period of time until they can be referred for prosecution by civilian law enforcement. Applewhite v. United States Air Force, 995 F.2d 997, 1001 (10th Cir. 1993). The exclusion of evidence is not a remedy for violation of the PCA but, instead, the remedy is to hold the person who violates the PCA criminally liable. United States v. Vaxima, Inc., 2022 WL 595655 (4th Cir. Feb. 28, 2022); United States v. Johnson, 410 F.3d 137, 149 (4th Cir. 2005).

Defendant has not shown that his attorney was ineffective for failing to raise the PCA in a motion to suppress evidence before trial. There is no dispute that NCIS agents conducted the initial investigation that led to defendant, but the investigation was focused on an IP address located at a military residence. Defendant's allegations do not suggest that NCIS agents were initially targeting a civilian, and defendant was not prosecuted by military law enforcement officials or a military tribunal. The Court also notes that the investigation concerned harm to minor children living on a military base, and NCIS agents were not to required to cease their investigation after learning that

civilian was involved in the possible commission of a child pornography offense. Defendant also fails to respond to plaintiff's argument that the PCA does not provide for the exclusion of evidence as a remedy, and defendant cannot show that Kirkpatrick's failure to file a motion to suppress raising the PCA had any effect on the outcome of the proceedings. As to defendant's second claim concerning the seizure of a phone from an automobile, defendant's vague allegations fail to establish that anything was even seized from an automobile, let alone that such evidence was actually relevant to the criminal charges against defendant. Plaintiff has produced the permissive authorization for search and seizure and the report of evidence seized pursuant to the permissive authorization, and the report does not identify any evidence seized from an automobile. Dkt. # 69-4. Defendant has not shown that any reasonable attorney would have had a colorable basis to file a motion to suppress based on the PCA or the alleged seizure of evidence from an automobile, and defendant's ineffective or assistance of counsel claims are meritless.[2]

---

[2] Plaintiff also argues that Kirkpatrick was not ineffective for withdrawing the motion to suppress statements defendant made to NCIS agents. Dkt. # 69, at 23. It is not clear that defendant is asserting such a claim but, even if defendant were, the Court agrees that the claim would be meritless. The withdrawal of a pending motion is a common condition of plea agreements and defendant received a substantial benefit by accepting the plea agreement. The presentence investigation report states that defendant's advisory guideline range was 292 to 360 months as to count one, and the motion to suppress statements would not likely have resulted in the dismissal of any charges against defendant even if the motion were granted. Kirkpatrick acted reasonably by advising defendant to withdraw the motion to suppress statements as part of the plea agreement, and this advice would not constitute ineffective assistance of counsel.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Dkt. # 59) is **denied**. A separate judgment is entered herewith.

**DATED** this 28th day of December, 2022.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE